UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WOODROW ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07-CV-1251 (JCH) |
| ) | |
| JAMES PURKETT, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

The matters are before the Court on the following motions: Plaintiff Woodrow Anderson's Motion for Summary Judgment (Doc. No. 52), filed May 8, 2008; Defendants Donna Adams, Dr. Charles Chastain, Correctional Medical Services, Inc., Tina Hayes, and Tymber Spray's Motion for Summary Judgment (Doc. No. 55), filed May 19, 2008; and Plaintiff's Motion for Order Compelling Disclosure and Discovery (Doc. No. 63), filed July 14, 2008. The matters are fully briefed and ready for a decision.

## **BACKGROUND**

At all relevant times, Plaintiff was in the custody of the Missouri Department of Corrections ("Department") at the Eastern Reception Diagnostic and Correctional Center ("Prison") in Bonne Terre, Missouri. (Defs.' Statement of Facts, Doc. No. 57 at ¶¶ 1-2). The Department contracts with Defendant Correctional Medical Services, Inc. ("CMS") to provide its inmates with medical care. Defendants Donna Adams and Tymber Spray are nurses employed by CMS that work at the Prison. (Id. at ¶¶ 5-7). CMS employs Defendant Tina Hayes as the Prison's Director of Nursing. (Id. at ¶

6). Dr. Charles Chastain is a physician that works as an independent contractor for CMS at the Prison. (Id. at ¶ 3).

On June 17, 2003, Terri Foy, a nurse at the Prison, examined Plaintiff after he reported experiencing "a tight burning sensation" in his chest after lifting weights for his arms and chest. (Id. at Ex. B p. 1). Foy found that his vital signs, heart sounds, and lungs all appeared normal. (Id.). Based on this examination and Plaintiff's lack of cardiac history, Foy concluded that Plaintiff's pain was musculoskeletal in nature and gave him aspirin for the pain. (Id. at p. 2). She also instructed him to return to the medical unit if the pain persisted for more than two day or if he developed nausea, vomiting, sweating, or weakness. (Id.).

Plaintiff alleges that he went to the medical unit on June 25, 2003 because of severe chest pain. (Second Am. Compl., Doc. No. 29 at ¶ 2). He alleges that Defendant Terry Bishop examined him and told him it was a muscle spasm. (Id.). He also alleges that on July 3, 2008 he returned to the medical unit complaining of severe chest pain. (Id. at ¶ 3). Bishop, Defendant Deborah Carter, Dr. Chastain, Adams, and Hayes all allegedly examined him, and told him he it was indigestion. (Id.). The medical records submitted by Defendants contain no mention of these alleged visits, and Plaintiff has not submitted any admissible evidence showing that these visits occurred.

On July 10, 2003, Plaintiff reported to the medical unit again complaining of chest pain. (Defs.' Facts at Ex. B p. 2). Foy examined him and found that his blood pressure and pulse were abnormal. (Id. at p. 3) She gave him aspirin and notified the doctor that he was in "cardiac and/or respiratory distress." (Id. at p. 4). The doctor ordered a Troponin test[1] and an electrocardiograph ("EKG"). (Id. at p. 3). A chest x-ray showed that he had a normal cardiac silhouette, no effusions,

---

[1]Troponin is a cardiac enzyme released when blood flow to the heart is disrupted. See http://en.wikipedia.org/wiki/Troponin (last visited July 28, 2008). Plaintiff's Troponin test was positive. (Resp. at Ex. B p. 4).

and "no acute lung infiltrates." (Id. at p. 4). On July 14, 2003, he underwent diagnostic blood work. (Id. at p. 5). Two days later, Plaintiff complained of nausea and vomiting, and the medical staff gave him antacids. (Id. at p. 8).

On July 17, 2008, a corrections officer alerted the medical unit that Plaintiff was having severe chest pain. (Pl.'s Resp., Doc. No. 62 at Hooker Aff. p. 1, White Aff. p. 1).[2] Adams, Carter, and Hayes came to the housing unit, assessed his condition, and concluded that he had indigestion. (Id.). One witness heard a nurse say "he's just faking" it. (Hooker Aff. at p. 1). Three hours later, a corrections officer alerted the medical unit that Plaintiff was still having severe chest pain. (Id.). Spray treated him and found his blood pressure was elevated and his breathing was labored. (Defs.' Facts at Ex. B p. 8). Spray ordered a EKG, notified the doctor on call, and sent him to Parkland Health Center. (Id.). Parkland then transferred Plaintiff to Capitol Regional Medical Center because he needed more extensive cardiac care than it could provide. (Id. at Ex. C p. 13).

At Capitol Regional, Dr. Conrad Balcer and Dr. W. Mitchell See determined that Plaintiff had suffered an acute myocardial infarction,[3] had severe three vessel coronary artery disease,[4] and left ventricular dysfunction. (Id. at Ex. C p. 15). On July 18, 2008, Dr. See performed an "emergent

---

[2] Defendants contend that the Court cannot consider these affidavits because they do not contain any admissible evidence. See Fed. R. Civ. P. 56(e) (requiring that an affidavit must be "made on personal knowledge" and contain facts that "would be admissible in evidence."). Upon consideration, the Court finds that they are not wholly inadmissible. For example, what the witnesses heard the nurse say is admissible. See Fed. R. Evid. 801(d)(2). As such, the Court will only consider the admissible portions of these affidavits.

[3] A myocardial infarction is a disruption of the blood supply to the heart due to blockages in the arteries. It is generally referred to as a heart attack. Stedman's Medical Dictionary 968 (28th ed. 2006).

[4] Coronary artery disease is the narrowing of the arteries that results in reduced blood flow to the heart. (Defs.' Facts at ¶ 45 n. 8).

coronary artery bypass grafting times four"[5] on Plaintiff. (Id.). On July 21, 2008, Plaintiff was discharged from Capitol Regional. (Id. at Ex C pp. 1-2). He spent the next three days in the Prison's infirmary being monitored by the medical staff. (Id. at ¶¶ 47-52). On September 16, 2003, Plaintiff informed the medical staff that he thought his heart "skips a beat, maybe a couple of times a day," but an examination did not reveal any irregularities. (Id. at Ex. B p. 14). The next day, a doctor cleared him return to work as a cook. (Id.).

Plaintiff filed this action on July 9, 2007. (Doc. No. 1). In his Second Amended Complaint, Plaintiff alleges that Adams, Bishop, Carter, Dr. Chastain, CMS, Hayes, James Purkett, and Spray were deliberately indifferent to his serious medical needs, in violation of 42 U.S.C. § 1983. (Doc. No. 29). He alleges that Hayes[6] also violated § 1983 by failing to supervise the other nurses. (Id. at p. 8). The Court dismissed Plaintiff's claim against James Purkett on March 10, 2008. (Doc. No. 47).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477

---

[5]In this surgery, arteries or veins from another part of the body are grafted onto the coronary arteries. The grafted arteries are used to bypass the blocked arteries and improve blood flow to the heart. (Defs.' Facts at ¶ 45 n. 7).

[6]In his Second Amended Complaint, Plaintiff alleges that Spray is the head of nursing. (Sec. Am. Compl. at p. 8). Hayes, not Spray, is the head of nursing. (Defs.' Facts at ¶ 6). The Court, however, reads the complaint as properly naming Hayes as the head of nursing. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (stating that pro se complaints "are to be liberally construed.").

U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## **DISCUSSION**

### **I. Dismissal for Lack of Service**

Defendants first assert that the Court must dismiss Plaintiff's claims against Carter and Bishop because he has not served them with process. Plaintiff contends that he cannot serve Carter and Bishop until Defendants provide him with their addresses. (Doc. No. 63)[7].

A plaintiff must serve a defendant with process within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). Failure to do so results in the claims against that defendant being dismissed without prejudice. Id. If plaintiff can show good cause for extending this time, the Court must give plaintiff more time. Id.

---

[7]In his motion to compel, Plaintiff also alleges that Defendants never answered his interrogatories. This issue, however, is moot because Defendants have sent him the requested information. (Doc. No. 65).

Upon consideration, the Court will dismiss Plaintiff's claims against Carter and Bishop for lack of timely service. An in forma pauperis plaintiff is responsible for providing the defendant's address. See Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir. 1993). Because Plaintiff filed this action in forma pauperis (Doc. No. 2), he is responsible for providing Defendants' addresses, meaning he cannot satisfy Rule 4(m)'s good cause exception. Thus, the claims against Bishop and Carter are dismissed without prejudice.

## II. Plaintiff's § 1983 Claims

Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical needs by failing to treat his chest pain until July 17, 2003. Defendants respond that Plaintiff cannot present sufficient evidence to support his claim.

A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Jones v. Minn. Dep't of Corrs., 512 F.3d 478, 481 (8th Cir. 2008). A prima face case alleging deliberate indifference requires Plaintiff to demonstrate that he "suffered from an objectively serious medical need and that 'the prison officials knew of but deliberately disregarded' that need." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (quoting Alberson v. Norris, 458 F.3d 762, 765-66 (8th Cir. 2006)). Making this determination is a "factually-intensive inquiry." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118 (8th Cir. 2007). An objectively serious medical need is one that "either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones, 512 F.3d at 481 (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). That the prison officials had actual knowledge of the serious medical need "may be inferred from circumstantial evidence or from the very fact that the risk was obvious." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

If prison officials have actual knowledge of a serious medical need and fail to take reasonable measures to address it, they may be liable for deliberate indifference. Farmer, 511 U.S. at 847. Medical malpractice, however, is not actionable under the Eighth Amendment. Smith v. Clarke, 458 F.3d 720, 724 (8th Cir. 2006). For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995); Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003) (explaining that deliberate indifference is akin to criminal recklessness)). With these standards in mind, the Court will analyze Plaintiff's claims against each Defendant.

### A. Spray

Plaintiff's only allegation specifically related to Spray is that she failed to supervise the nursing staff. (Second Am. Compl. at p. 8). This allegation is without merit because Spray is not a supervisor. Additionally, the medical records indicate that Spray only provided Plaintiff with treatment on July 17, 2003, when she determined that his vitals were abnormal, ordered an EKG, and contacted the on-call physician. (Resp. at Ex. B p. 8). No reasonable juror would consider this treatment deliberately indifferent, and summary judgment will be granted in her favor.

### B. Dr. Chastain

Plaintiff alleges that Dr. Chastain was deliberately indifferent to his chest pain on July 3, 2003. (Second Am. Compl. at p .4). This claim fails because Plaintiff has not submitted any admissible evidence that he sought medical treatment on that day. Rather, the medical records show that Dr. Chastain's only involvement with Plaintiff's treatment was reading his x-ray on July 10, 2003 and

finding that it appeared normal.[8] (Resp. at Ex B pp. 4-5). Accordingly, no evidence exists that Dr. Chastain deliberately ignored Plaintiff's medical needs, and summary judgment will be granted in his favor.

### C. Adams and Hayes

#### 1. Individual Liability

Plaintiff alleges that Adams and Hayes deliberately ignored his medical needs on two occasions. First, he alleges that they ignored his medical needs on July 3, 2003. The record, however, contains no evidence that Plaintiff sought medical treatment on that day. (Defs.' Facts at ¶ 21). Thus, this allegation must be dismissed.

Secondly, he submits two affidavits stating that Adams and Hayes refused to treat him on July 17, 2003 because they thought he was "faking" it. (Pl.'s Resp. at Hooker Aff., White Aff.). This refusal resulted in Plaintiff not receiving treatment for another three hours. (Resp. at Ex. B p. 8).

When an inmate alleges that a delay in treatment violated the Eighth Amendment, the objective seriousness of that deprivation is measured by "by reference to the *effect* of the delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original). To establish this effect, an inmate must submit medical evidence that verifies the delay had a "detrimental effect" on him. Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). In Laughlin, the Eighth Circuit held that prison officials were not deliberately indifferent to an inmate's medical needs by waiting over seven hours to treat him after he complained of chest pain because he had not submitted any medical evidence showing that this delay had a detrimental effect on his health. 430 F.3d at 928-29; Cf. Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (holding that the prison staff's ten

---

[8]Dr. Chastain also treated Plaintiff after his bypass surgery, but none of Plaintiff's allegations concern this treatment. (Resp. at Ex B. pp. 11-12).

-8-

minute delay in administering CRP to an inmate, who had a severe heart attack and whose face was turning blue and purple, violated the Eighth Amendment).

Upon consideration, Adams and Hayes' refusal to treat Plaintiff did not violate § 1983 because he has not shown that the delay had any detrimental effect on his health. Rather, the record shows that Plaintiff made a full recovery. (Resp. at Ex. B pp. 9-14). Thus, summary judgment will be granted in Adams' favor.

### 2. Supervisor Liability

Plaintiff alleges that Hayes, in her role as the director of nursing, violated his Eighth Amendment rights because she "was the nurse in charge and giving orders to the defendants." (Second Am. Compl. at p. 8).

There is no vicarious liability under § 1983. Tlamka, 244 F.3d at 635. A supervisor may be held individually liable under § 1983 if she directly participates in a constitutional violation or if a failure to supervise and train the offending employees properly caused a deprivation of constitutional rights. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). Plaintiff must demonstrate that the supervisor was "deliberately indifferent to or tacitly authorized the offending acts." Id. This requires a showing that the supervisor had notice that the training procedures and supervision were "inadequate and likely to result in a constitutional violation." Id.

Upon consideration, Plaintiff has not submitted any evidence showing that a constitutional violation occurred. Without an underlying constitutional violation, a supervisor cannot be liable under § 1983 for the actions of her employees. Thus, summary judgment will be granted in Hayes' favor.

### D. CMS

Finally, Plaintiff alleges that CMS violated his Eighth Amendment rights, but he does not make any specific allegations to support this claim.

There is no vicarious liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To support a claim against CMS under § 1983, Plaintiff must show that there was a policy, custom, or official action that inflicted an actual injury. Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006). A policy is an "a deliberate choice of a guiding principle or procedure made by ... [an] official who has final authority regarding such matters." Betchel v. City of Belton, 250 F.3d 1157, 1160 (8th Cir. 2001). An actionable custom exists if Plaintiff shows (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by CMS employees; (2) the deliberate indifference to or tacit authorization of such conduct by CMS' policymaking officials; and (3) that he was injured by the custom. Dashley v. Corr. Med. Servs., Inc., 345 F. Supp. 2d 1018, 1022 (E.D. Mo. 2004)(citing Jane Doe A. ex rel. Jane Doe B. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990)).

Upon consideration, Plaintiff has not submitted any admissible evidence showing that CMS had either a custom or policy of being deliberately indifferent to the inmates' medical needs. As such, summary judgment will be granted in CMS' favor.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** Plaintiff's Motion to Compel (Doc. No. 63) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 52) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 55) is **GRANTED**. Plaintiff's claims against Defendants Terry Bishop and Deborah Carter are **DISMISSED** without prejudice. Plaintiff's claims against the remaining Defendants are **DISMISSED** with prejudice. A separate order of dismissal will accompany this order.

Dated this 29th day of July, 2008.

                                                /s/ Jean C. Hamilton
                                                UNITED STATES DISTRICT JUDGE